## Independent Life Insurance Company v. Evans.

(Decided January 14, 1915.)

### Appeal from Jefferson Circuit Court (Chancery, No. 2).

Insurance—Action to Set Aside Writing Expressing Willingness to Cancel Contract of—Fraud.—A writing signed by insured expressing a willingness to have a contract of insurance canceled does not amount to a cancellation, and the evidence showing it was procured by the fraud and misrepresentation of an agent of the company by which the insured who was sick and in a weakened condition, was overreached, the writing was properly set aside.

BLACKWOOD & CARTMELL and H. O. WILLIAMS for appellant.

P. H. SAVAGE and A. J. BIZOT for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The death of the appellee, Allen B. Evans, occurring after this appeal was taken, it has been revived in the name of his mother, Flora B. Evans, administratrix. The suit was filed to set aside a certain writing executed by Allen B. Evans, whereby he expressed a willingness to cancel a $1,000 insurance policy, issued upon his life by the appellant, upon the payment to him of $200. It is charged that the writing was procured by certain false and fraudulent representations of appellant's agent.

The insurance policy was issued to Allen B. Evans on November 17th, 1908, when he was 29 years old. The policy stipulates that in the event the assured shall become so totally and permanently disabled by reason of bodily injury or disease as to prevent him from engaging in any gainful occupation, then the company will pay for the insured the premiums accruing on the policy, and without any charge to the insured or against the policy. It is also stipulated that the policy shall be incontestable after one year from its date, except for non-payment of premiums.

The insured paid the annual premium in November, 1909, and November, 1910, and, in fact, tendered the premium accruing in 1911. The company refused to accept this 1911 payment, claiming that the writing involved in this action, executed a few weeks before the tender, cancelled the policy.

During 1909, the young man had a spell of malaria, and from which he never recovered. In his weakened condition, he soon became a victim of tuberculosis. As usual in such cases, he grew weaker and weaker, and after 1910 was confined to his bed a large part of the time. Feeling that he was totally disabled, early in October, 1911, he notified the company of this fact in writing, and requested the company to pay the premiums and keep his policy alive according to its terms. The company instructed its physician, Dr. Lindenberger, to examine him. Dr. Lindenberger visited and examined the insured on October 23rd, 1911. He found the conditions above mentioned, and testifies that the insured was totally disabled by reason of that disease, and so notified the company. The insured heard nothing from the company until October 30th, when he was visited by its agent, Mr. Keane. The young man was sitting up at the time, and Keane's visit, which lasted from one hour and a half to three hours, as estimated by the witnesses, resulted in the writing which is sought to be set aside. According to Evans and his mother, Keane began to ingratiate himself into their confidence by recounting his old friendship with the elder Evans, and the fact that his religious faith was the same as the Evans'. Then, at his request, Allen Evans went with him into another room for a private conversation. Keane told him he had come to see about the insurance, and first offered a return of the premiums with six per cent interest. This

being refused, he told him the company was canceling all of its policies, and was preparing to quit business in the State, and suggested that if Evans knew as much about the company as he, Keane, did, he would accept the proposition. He finally offered to pay $200 for a cancellation of the policy. Keane says the conversation with reference to old friendship and religious affinity did not occur until after his $200 offer was accepted. He admits that the company was not canceling any policies and was making no preparation to quit the State; says it was solvent, and that he knew of no reason why one should be willing to accept less than its contract obligation in order to secure a present settlement with it. But he denies making any such representations about the company. Both agree that at this time his mother was called into the conversation, and she was informed of the proposition with request for her advice. She said it was her son's affair, and he would have to act for himself. Anyhow, the following writing was then drawn up and signed by the young man:

"Louisville, Ky., October 30, 1911.

"Allen B. Evans will accept $200.00 in full settlement for his policy with the Independent Life Insurance Company for full settlement on No. 467 on my life.

"ALLEN B. EVANS."

Allen Evans testifies that he told Keane he would not and did not intend to bind himself in this matter until he could consult with his father when he returned home that night, and Keane agreed to this, and said he would come back next morning with the money and get the policy. Keane denied that the young man signed it with any such reservation. The $200 was never paid, nor was the policy ever surrendered or canceled in fact. The company relies upon the writing above quoted as its cancellation. Keane testifies that the next morning he returned to the house with the money and tendered it to Allen Evans, but he would not accept it, and said that he had been advised by his father and physician not to surrender the policy.

Mrs. Evans says that Keane never had any such conversation with her son, and made no tender of the money nor demand for the policy. She says that he did come there next morning and she met him on the front porch; that her son was upstairs in bed; and she would not let Keane enter or see the boy, and he did not see or talk with

him, because the doctor had said his physical condition was such that he should see no one. Allen Evans is not introduced again to testify on this proposition. His testimony, which we have referred to, was given by deposition taken while he was in bed and before Keane testified.

The action is in equity and such conflict as there was in the evidence was passed upon by the trial judge. His finding is supported by the weight of the evidence, and we will not disturb the judgment, which sets aside the writing.

The written opinion of the lower court, filed with the record, is so pointed that we copy it:

"The plaintiff was a confined and hopeless invalid, and was dependent upon his family for nursing, medicines, etc. He had been in that condition for several months. In response to his letter seeking to avail himself of the total disability clause in his policy, the defendant sent its physician to examine him and was advised by the physician that plaintiff was afflicted with advanced pulmonary tuberculosis. Thereupon a special agent of defendant was sent to him for the purpose of securing a cancellation of the policy. The plaintiff had not contemplated a cancellation or surrender of his policy up to that time. He was very weak physically and was in no condition to carry on negotiations of several hours, and at the end cope with a strong and vigorous person such as the agent of defendant. Under such circumstances, it would not be difficult, through religious sympathies, for the agent to ingratiate himself with plaintiff and to win his confidence. He was sent there to secure a cancellation of this contract and he accomplished his mission. From the physician's report upon the risk, it was a profitable transaction on the part of the defendant company to pay $200.00 in cash to get from under the certain and near liability for $1,000.00, and the suggestion that the cash value of the policy was $11.90 only is of no importance. The weight of the testimony shows that the plaintiff was overreached in the matter of the agreement to surrender and cancel the policy for $200.00, and there can be no doubt that plaintiff is totally incapacitated from pursuing a gainful calling."

In view of the young man's physical condition, and the fact that the company would soon have to pay the policy in full, and the further fact that the purpose of Keane's visit was to secure a cancellation of it in behalf

of the company, it is unreasonable to believe that the young man would have signed a writing for $200 whereby he surrendered an almost immediate right to $1,000, unless he was overreached and put in fear, particularly, if he was as strong mentally as Keane would have us believe. Keane must have shaken the insured's faith in the solvency of the company, as testified to by the insured, in order to gain his consent to take one-fifth of the amount due him under the contract, and which all concerned realized was soon to accrue.

More than this, the writing signed by the boy is nothing more than a proposal. Keane says that he accepted the proposition next morning, and tendered the amount called for, but this is denied by Mrs. Evans. Certain it is, the money was never paid, nor did the company get possession of the policy nor an actual cancellation. The writing itself does not amount to a contract, and the evidence is not convincing enough to put it in that category.

Wherefore the judgment of the lower court is affirmed.